IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

PEARLENE JOHNSON,

|  |  |  |
|---|---|---|
| | Plaintiff, | Case No. 3:07 CV 2125 |
| -vs- | | |
| | | MEMORANDUM   OPINION |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | | |
| | Defendant. | |

KATZ, J.

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate

Judge Vernelis K. Armstrong (Doc. 16), and Plaintiff Pearlene Johnson's ("Plaintiff") objections

to the R&R (Doc. 17).  In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this

Court has made a *de novo* determination of those of the Magistrate's findings to which Plaintiff

objects.

**I. Background**

The relevant background for this case is accurate and hereby incorporated as described in

the June 24, 2008 R&R of Magistrate Judge Armstrong (Doc. 16), as follows:

**PROCEDURAL BACKGROUND**
On November 12, 2002, Plaintiff filed an application for DIB alleging that
her disabling condition began on October 1, 2000 (Tr. 64-66). Plaintiff also
protectively filed a Title XVI application for SSI on October 25, 2002 (Tr. 15). The
applications for DIB and SSI were denied initially and on reconsideration (Tr. 15,
59-62). Plaintiff requested a hearing on December 8, 2003 (Tr. 54). At the
administrative hearing conducted on June 27, 2005, Plaintiff, represented by
Attorney Loretta Wiley and Edwin Yates, Vocational Expert (VE) appeared and
testified before Administrative Law Judge (ALJ) Frederick McGrath (Tr. 24). The
Appeals Council denied Plaintiff's request for review on May 15, 2007 (Tr. 7-9).
**FACTUAL BACKGROUND**

At the time of hearing, Plaintiff was 5'7" tall and weighed 346 pounds. She had completed the eighth grade and lived alone in an apartment (Tr. 28-29).

Plaintiff was last employed in July 2004 and earlier she worked for two days in 2003. Prior to that she was employed on May 17, 2002. Plaintiff left this job because of persistent swelling (Tr. 29, 36). Most of her jobs were classified as nurse assistant type work (Tr. 28).

Plaintiff suffered from apnea, dyspnea, muscle spasms and chronic pain in her ankle and knee that resembled a pin prick (Tr. 30, 34). Plaintiff used a respiratory ventilation system while sleeping (Tr. 35). She avoided cold, heat, sitting and/or standing for prolonged periods as these conditions aggravated her pain (Tr. 30). The muscle spasms occurred two to three days monthly (Tr. 31-32). She used an inhaler twice daily to combat attacks of dyspnea (Tr. 34).

Plaintiff suggested that she could stand up to twenty minutes before she had to sit (Tr. 30). If she stood more than twenty minutes, her knees buckled. She believed that she could walk a block occasionally (Tr. 31). She was unable to manipulate with her left hand (Tr. 33).

To treat her symptoms, Plaintiff employed a heat pad, took Tylenol and elevated her feet above her heart (Tr. 31, 32). Plaintiff could not afford the brace prescribed to minimize the swelling in her left wrist (Tr. 32-33).

The VE opined that an individual of Plaintiff's age, with her educational and employment background, limited to medium work and restricted to no climbing could perform all of Plaintiff's past relevant work. If the hypothetical were amended to include light work only, the hypothetical individual could perform work as a housekeeper/cleaner. There were 6,200 such positions in the local economy. If the position were limited to sedentary work, the hypothetical individual would be able to perform work as a call out operator, hand mounter and late testers. There were approximately 700, 400, and 75, respectively, such positions in this local economy (Tr. 37).

All of the jobs suggested by the VE would require attendance for forty hours per week. Any employee who failed to meet less than 80 percent of the employer's expectations would be generally terminated. The hypothetical employee would be required to perform a full range of all the mental and physical demands of the listed jobs in order to be competitively employed in those positions (Tr. 38).

The VE further testified that if the hypothetical individual had difficulty using his or her hands for repetitive activities, the sedentary positions would be precluded. The ability to kneel was not a requirement for the performance of the job as housekeeper/cleaner (Tr. 39). The VE was not familiar with any employer that would accommodate Plaintiff's use of the respiratory ventilator during the course of the workday (Tr. 40).

## MEDICAL EVIDENCE

### 1996/1997

Plaintiff underwent therapy to address issues related to a painful left wrist (Tr. 319, 320).

**1999-2000**

Plaintiff underwent periodic blood pressure checks at the Toledo Health Department. During the course of her visits, the attending physician was ultimately able to get her blood pressure controlled with medication (Tr. 310-326).

**2001**

In March, May, June, July, August and September, Plaintiff was treated at the Toledo Health Department for a myriad of symptoms, including edema, numbness, chronic allergic rhinitis, rectal bleeding and tendinitis (Tr. 138-146, 302-309). Plaintiff was treated for a urinary tract infection on October 19 (Tr. 125-130).

**2002**

Plaintiff's glucose, cholesterol and triglyceride levels exceeded acceptable limits when tested on January 2 and August 16 (Tr. 150, 151, 330).

In January, February and April, Plaintiff visited the Toledo Health Department for blood pressure checks, treatment for sinusitis and arthritis (Tr. 134, 136).

The results of the gynecological cytology test administered on June 21 were negative for lesion or malignancy (T. 149). Plaintiff's glucose level was high when measured on July 12 (Tr. 165).

On July 10, Pat Vogelsang, a certified nurse practitioner, increased the dosage of the diuretic prescribed for purposes of reducing persistent swelling (Tr. 162). On October 8, Ms. Vogelsang, treated Plaintiff for left wrist pain (Tr. 157). On November 19, she described Plaintiff's medical conditions as hypertension, degenerative disc disease, peripheral edema, allergic rhinitis, obesity and left wrist pain (Tr. 155). Ms. Vogelsang opined that Plaintiff could stand/walk for two hours but she could only stand/walk without interruption for fifteen to thirty minutes. Plaintiff could (1) sit for two to four hours but she could only sit for thirty to sixty minutes without interruption, (2) lift/carry up to five pounds frequently and (3) bend, reach, and handle with moderate limitations. Although Ms. Vogelsang thought Plaintiff was unemployable, she suggested that Plaintiff's physical and/or mental functional limitations would only last nine to eleven months (Tr. 156).

**2003**

Dr. G. T. Matanguihan conducted an examination and found that Plaintiff was plagued with obesity and hypoxia (Tr. 169). Plaintiff's range of motion was normal in the cervical spine, shoulders, elbows, wrists, hands and fingers (Tr. 172). The range of motion in Plaintiff's hips, knees and ankles was decreased (Tr. 173).

The results of the radiological consultation conducted by Dr. Dean R. Ball on January 10, showed mild to moderate degenerative changes in Plaintiff's left knee and no evidence of acute cardiopulmonary process (Tr. 174). Later that month, Dr. Edmond W. Gardner found no clinical evidence of obstructive lung disease (Tr. 176). Dr. Nestor P. Zambrano diagnosed Plaintiff with moderately severe diverticulosis of the distal colon on January 24 (Tr. 299).

The pulmonary function test administered on February 20, showed evidence of decreased lung volumes attributed to obesity (Tr. 177). The echocardiogram

showed normal wall motions and thickness and aortic root and ventricular dimensions (Tr. 180). Plaintiff's left atrium was mildly enlarged and there was evidence of trivial mitral regurgitation and left ventricular diastolic dysfunction with elevated left atrial pressures (Tr. 181).

On March 26, Dr. Gardner opined that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, sit about six hours in an eight-hour workday and stand and/or walk about six hours in the eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 184). Plaintiff could never climb using a ladder, rope or scaffold, kneel, crouch or crawl (Tr. 185). There were no manipulative, visual, communicative or environmental limitations (Tr. 186-187).

On July 14 and 28, Dr. Ramon A. Issa determined that Plaintiff's hypertension had improved but her shortness of breath worsened (Tr. 196, 197). The results of the echocardiogram taken on July 17, were normal (Tr. 216).

In early August, Dr. Jeffrey R. Lewis found a small perfusion defect in the antero-septal wall of the heart (Tr. 212). In late August, Plaintiff had a syncopal episode. When Dr. Frank V. Murphy conducted Plaintiff's follow-up evaluation, he explained that her potassium levels were low and the results of a computed tomography (CT) scan were negative. He attributed the abnormal stress test as being "secondary to Plaintiff's body habitus" and suggested a referral to a cardiologist for further evaluation (Tr. 194-195).

The results of the Holter monitor showed rare isolated atrial premature beats. The study was otherwise, normal (Tr. 200). The carbon dioxide levels in Plaintiff's blood exceeded the normal range but Plaintiff's non-contrast enhanced CT scan of the brain was negative (Tr. 202, 205). The Doppler study showed a mildly dilated left atrium (Tr. 282).

Dr. Ellin Cusack Frair opined on October 1 that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eighthour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and pulling (Tr. 219). Plaintiff should never climb ladders, ropes or scaffolds, crawl, crouch or kneel (Tr. 221). Otherwise she had no manipulative, visual, communicative or environmental limitations (Tr. 221-222).

Plaintiff's upper respiratory infection was resolving and her asthma was controlled on December 4 (Tr. 241).

**2004**

In May, Dr. Hany Y. Khalil recommended that Plaintiff obtain a continuous positive airway pressure machine (CPAP) after he conducted a formal sleep study (Tr. 363). Plaintiff's sleep was improved by June 6 (Tr. 345). By January 20, 2005, Plaintiff reported to Dr. Khalil that the CPAP machine was working, she was not experiencing any excessive daytime sleepiness and she was more active during the day (Tr. 343).

Plaintiff was treated for chest pains on July 9, 2004 (Tr. 372). She was treated twice for atypical chest pains on July 10 (Tr. 368, 369). The results of the

treadmill exercise stress test administered on August 12, showed borderline electrocardiographic changes (Tr. 293). Dr. Mohammed Alkhateeb found no evidence of coronary artery disease and her hypertension was under control on August 25 (Tr. 337). Plaintiff was considered anemic on August 30 (Tr. 238).

In September, the results of her bilateral mammogram were normal, multiple uterine fibroids were observed as a result of a pelvic ultrasound and the results from the ultrasound of Plaintiff's gallbladder and bile ducts were normal (Tr. 277-280). Plaintiff was treated for a urinary tract infection in December (Tr. 232, 233). Her hypertension was controlled (Tr. 234). Her glucose levels, however, exceeded the normal range (Tr. 255).

**2005**

In January, Plaintiff was treated for asthma and gastroesophageal reflux (Tr. 231). The results of the colonoscopy administered on January 24 showed small hemorrhoids and a few diverticula on the colon (Tr. 339). The biopsy revealed several polyp formations (Tr. 340).

Plaintiff's hypertension was controlled in January 2005 and uncontrolled in April 2005 (Tr. 230, 231).

R & R, Doc. 16 at 2-8.

Magistrate Judge Armstrong recommends that this Court affirm the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i), 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

Plaintiff filed a timely objection to the R&R on June 24, 2008 requesting that this Court not adopt the R&R, but remand for proper adjudication. Doc 17 at 1. For the following reasons, this Court agrees with the Magistrate Judge's findings that the Commissioner's denial of Plaintiff's application is supported by substantial evidence and, therefore, hereby adopts the recommendation in full. Doc. 16.

**II. Standard of Review**

**A. Review of an R&R**

Any party may object to a magistrate judge's proposed findings, recommendations, or report made pursuant to Fed. R. Civ. P. 72(b).  The district judge to whom the case was assigned may review a report or specified proposed findings or recommendations of the magistrate judge, to which proper objection is made, and may accept, reject or modify in whole or in part the findings or recommendations of the magistrate judge.  Fed. R. Civ. P. 72.3(b).  This Court has reviewed the findings of the Magistrate Judge *de novo*.  *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981).

### B. Disability standard

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505; *see id.* § 416.905.

### C. Review of Commissioner's decision

The standard of review described by the Magistrate Judge is hereby adopted as follows:

> Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. [*Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (6th Cir. 1994)] (*citing Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id*. (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)).
> In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. Id. (*citing Kirk*, 667 F.2d at

6

536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, See *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

R&R at 9-10.

### III. Review of Plaintiff's objections

#### A.  The Magistrate Judge did not err in affirming the Commissioner's Evaluation of the Nurse Practitioner.

Plaintiff argues that the Magistrate Judge erred in affirming the Commissioner's evaluation of the nurse practitioner.  Doc. 17 at 1.  Plaintiff specifically takes issue with the Magistrate Judge's assertion that there is no requirement to apply Social Security Ruling ("SSR") 06-03p *ex post facto*. *Id.*; *See* SSR 06-03p, 2006 WL 2329939 (August 9, 2006).  Plaintiff maintains that 06-03p did not state new policy, but clarified existing policy, and thus its substance applies to this case.  Doc. 17 at 2.

SSN 06-03p, which became effective on August 9, 2006, clarifies how Commissioners consider opinions from sources who are not "acceptable medical sources."  SSR 06-03p at *1. The ruling states in relevant part that evidence from "other sources" may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.*  This includes evidence from nurse practitioners.  *Id*. at *2.  While these sources "cannot establish the existence of a medically determinable impairment," they "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id*.  The ruling requires that opinions from "other sources" be evaluated using factors including the length of time the source has known the individual, the consistency of the source's opinion with the evidence, and how well the source explains the opinion.  *Id*.

7

The Sixth Circuit considered whether SSR 06-03p applies to appeals pending in the federal courts as of August 9, 2006 in *Cruse v. Comm'r of Soc. Sec*, 502 F.3d 532 (6th Cir. 2007). In *Cruse*, the court concluded that due to the absence of any Constitutional or statutory intent to apply the rule to appeals pending in the federal courts as of August 9, 2006, SSR 06-03p does not apply to such cases. *Id*. at 541-542. Here, the Commissioner's decision was issued on March 15, 2006. As in *Cruse*, this case was pending in federal court as of August 9, 2006. Thus, SSR06-03p does not apply.

The Commissioner followed the rules that apply to this case. When the Commissioner decided this case, the evidence from the nurse practitioner's opinion could be used to show the severity of an impairment and how it affected the claimant's ability to work. *See* 20 C.F.R. § 404.1513(d)(1). The Commissioner had discretion to determine the proper weight to accord the nurse practitioner's opinion. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997).

Here, the Commissioner summarized the nurse practitioner's findings, including the notation to evaluate Plaintiff's feet and legs. In determining the weight to accord the nurse practitioner's opinion, the Commissioner discounted the nurse practitioner's opinion because it lacked supportive objective evidence. The Commissioner's decision is consistent with the applicable rules. This Court finds no error in the Magistrate Judge's conclusions that "[t]he ALJ was well within his discretion to determine the weight, if any, to be attributed to the opinions of the nurse practitioner" and that "[s]uch consideration is consistent with applicable procedural rules at the time the decision was rendered." Doc. 16 at 12.

**B. The Magistrate Judge did not err in the discussion of the Commissioner's consideration of Plaintiff's obesity.**

8

Plaintiff argues that the Magistrate Judge's review of the Commissioner's evaluation of Plaintiff's obesity failed to comport with legal standards.  Doc. 17 at 2.  First, Plaintiff argues that the Magistrate Judge failed to properly analyze the Commissioner's failure to consider Plaintiff's obesity when considering her experience of pain.

This Court finds that the Magistrate Judge sufficiently considered the Commissioner's evaluation of Plaintiff's pain, including pain from her obesity.  Due to her pain, Plaintiff claimed that: she could not stand for twenty minutes before she had to sit; she avoided sitting and standing for prolonged periods; she had two or three muscle spasms each month; she used an inhaler to combat dyspnea attacks; she had decreased lung volume attributed to obesity, and; she was unable to manipulate with her left hand.  Tr. 30-34.  However, the medical evidence showed that the results of Plaintiff's neurological exam and cardiac test were normal or within range.  Tr. 169, 181, 294, 337.  Also, the CPAP machine improved Plaintiff's fatigue, and Plaintiff's hypertension was controllable with drug therapy.  Tr. 322, 343-344.  As the Magistrate Judge properly determined, the Commissioner "supported his decision with substantial evidence that suggested that the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work with medical evidence was inconsistent with Plaintiff's assertions," and "since the ALJ supported his decisions with substantial evidence in the record, the decision must be affirmed."  Doc. 16 at 14.

Specifically, Plaintiff points to Dr. Raymon Issa's opinion that Plaintiff's joint pains are "most likely related to her obesity."  Tr. 197.  However, when the Commissioner asked Plaintiff about the joint pain in her left wrist, Plaintiff responded that while she experiences varying levels of pain, she medicates with Tylenol.  Tr. 33-34.  Also, although Plaintiff could not carry a gallon

of milk with her left hand, she could use her fingers and carry light objects such as a spoon.  *Id.*

Furthermore, the record indicates that the Commissioner determined that Plaintiff did not have a

major weight-bearing joint resulting in the inability to ambulate effectively.  Tr. 18.

Next, Plaintiff argues that the Commissioner's decision appeared to dismiss Plaintiff's

symptoms because they were the result of obesity rather than a documented lung condition, in

violation of SSR 02-1p, 67 Fed.Reg. 57, 859 (Sept. 12, 2002).  Doc. 17 at 3.  Specifically, Plaintiff

argues that the Commissioner dismissed Plaintiff's pulmonary test indicating decreased lung

volume because it was attributed to Plaintiff's obesity rather than a lung condition.

The Sixth Circuit has ruled that "Social Security Ruling 02-01p does not mandate a

particular mode of analysis. It only states that obesity, in combination with other impairments,

'may' increase the severity of the other limitations."  *Bledsoe v. Barnhart*, 165 Fed. Appx. 408,

411-12 (6th Cir. 2006).  "[I]t is a mischaracterization to suggest that Social Security Ruling

02-01p offers any particular procedural mode of analysis for obese disability claimants." *Id.*

Here, the Commissioner did not dismiss Plaintiff's pulmonary test indicating decreased

lung volume because it was attributed to Plaintiff's obesity rather than a lung condition.  The

Commissioner determined that Plaintiff's swelling, shortness of breath, and pain were secondary

to her obesity, but that these symptoms were exacerbated by her obesity.  The record does not

show evidence that suggests that Plaintiff's weight impairs her ability to work despite the

unfortunate difficulties she may face as a result of her obesity.  As the Magistrate Judge properly

concluded, there is insufficient evidence that Plaintiff's "exertional limitations are of the

significance to impede Plaintiff's ability and aptitude necessary to do most jobs."  Doc. 16 at 15.

**IV. Conclusion**

10

For the reasons discussed herein, the Court adopts the Report & Recommendation of the

Magistrate Judge in its entirety. (Doc. 16).

IT IS SO ORDERED.

                                              s/ *David A. Katz*
                                             DAVID A. KATZ
                                             U. S. DISTRICT JUDGE